## TANNER v. BEERS.

No. 3004.   Decided May 5, 1917.   (165 Pac. 465.)

MANDAMUS—APPROPRIATIONS—POWERS OF STATE ENGINEER.   Under
   Comp. Laws 1907, Sec. 1288x10, providing that the state engi-
   neer shall approve applications for water rights not conflicting
   with prior applications or where the proposed use will not
   impair existing rights, a landowner was not entitled to man-
   damus to compel the engineer to grant the right to perfect the
   irrigation ditch of a third person so as to avoid waste of water
   by seepage and to permit the landowner to use the water saved.

Appeal from District Court, Fourth District; Hon. *A. B.
Morgan,* Judge.

Action by Freeman Tanner against W. D. Beers, State
Engineer.

Judgment for defendant.   Plaintiff appeals.

AFFIRMED.

*Booth & Booth* for appellant.

*Dan B. Shields,* Atty. Gen., and *O. C. Dalby* and *Jas. H.
Wolfe,* Asst. Attys. Gen., for respondent.

FRICK, C. J.

The plaintiff commenced this action against the defendant
as state engineer of the State of Utah.   In the complaint it
is, in substance, alleged that the plaintiff, on the 23d day of
July, 1908, made an application to the defendant, as state
engineer, pursuant to the laws of this state to appropriate
ten second feet of the unappropriated waters of the Provo
River; that notice of the application was published as required
by our statute on the 23d day of January, 1914, and the
publication was completed on the 23d day of February fol-
lowing; that a protest against the granting of said application
upon various grounds was duly filed with the state engineer
by the Provo Bench Canal & Irrigation Company, hereinafter
called the company, on the 9th day of March, 1914; that on

the 16th day of June, 1915, the state engineer "without suffi-
cient reason rejected the application of the plaintiff;" that
by reason of the rejection of said application the plaintiff is
"deprived of a substantial right." The plaintiff prays judg-
ment:

"That the said defendant, as state engineer aforesaid, be
ordered by the court to grant the application to plaintiff to
appropriate said water, and that the plaintiff be granted gen-
eral relief in the premises."

A copy of the application filed with the state engineer is
attached to and made a part of the complaint. The applica-
tion is too long to be inserted here. It must suffice to say
that it was made to appear therefrom that the plaintiff sought
to appropriate ten second feet of water which he alleged was
being lost and wasted by seepage by reason of the imperfect
condition of a certain ditch owned and used by said com-
pany of the length of about 7,000 feet, and which water,
plaintiff alleged, he intended to save by puddling and improv-
ing the bottom and sides of the ditch aforesaid, and by that
means to save said ten second feet of water from being lost
and wasted and to use the same for a beneficial purpose.
What plaintiff proposes to do in that regard is stated in his
application in the following words:

"From the point of diversion of the Provo Bench Canal
described on page 1 the Provo Bench Canal & Irrigation Com-
pany conduct a stream of water, which fluctuates during the
irrigation season from an extreme low flow of 30 cubic feet ·
per second to an extreme high flow of 116 cubic feet per sec-
ond. This stream of water for a distance of approximately
7,000 feet runs along the steep sloping east border of Provo
Bench, over coarse boulders and gravel, through which much
of the water seeps and is wasted. It is the intention of the
applicant to improve the grade of the canal so that the depth
of water in the canal section will be uniform and puddle the
bottom and sides of said canal so as to reduce seepage waste
to a minimum. The water saved by these improvements the
applicant claims the right to appropriate and use on the lands
heretofore described. In order to determine the losses in that
portion of the canal that is to be improved, a record of canal

flow at the entrance and exit of said portion is now being made, and will be continued for such length of time as the state engineer may deem sufficient to determine the seepage losses in said portion.''

The action was originally commenced against the state engineer alone. The company was, however, permitted to intervene upon its own application. Both the state engineer and the company filed general demurrers to the complaint. The district court sustained the demurrers and dismissed the complaint. The plaintiff appeals.

The only ruling that is assailed by the assignments of error is the one relating to the demurrer interposed by the state engineer, and hence we shall confine our remarks to that demurrer.

The state engineer rejected the application for the reasons stated by him, which, giving them in his own language, are as follows:

''I am herewith returning your application 1976, which calls for ten second-feet of water from Provo River, the granting of which was protested by the Provo Bench Canal & Irrigation Company on March 9, 1914, the application having been this day rejected. The application contemplates saving water by improving the Provo Bench Canal, by, improving the grade of the canal and puddling the side and bottom. The state engineer has not the power to grant an applicant a right to go onto a private canal and improve it for the purpose of saving the water lost by seepage, and therefore he has no jurisdiction over an application of this nature; hence its rejection.''

The law defining the duties of the state engineer, which was in force when plaintiff made his application, is found in Comp. Laws 1907, section 1288x10, which reads as follows:

''All applications which shall comply with the provisions of this title and with the regulations of the state engineer's office shall be filed and recorded in a suitable book kept for that purpose; and it shall be the duty of said engineer to approve all applications made in proper form and which are not in conflict with prior applications, or where the proposed

use will not impair the value of existing rights. But, where there is no unappropriated water in the proposed source of supply, or where the proposed use will conflict with prior applications, or with existing rights, it shall be the duty of the state engineer to reject such application.''

The rights of the applicant, in case he is dissatisfied with the action of the state engineer, are defined by Comp. Laws 1907, section 1288x14, which at the time of plaintiff's application read as follows:

''Any applicant or protestant who is dissatisfied with the action of the state engineer may bring an action in the district court of the county in which the point of diversion of the water proposed to be appropriated is situated, for the purpose of adjudicating the questions involved between the applicant and protestant. Such action must be brought within sixty days of notice of the action of the state engineer, and if not brought within that time, the engineer shall proceed in accordance with the action taken thereon by him. But if such action be brought within said time, notice thereof shall be filed with the state engineer, and thereafter he shall take no further action upon such application or protest until the rights of the parties shall be determined by mutual agreement among themselves or by the courts. Upon the final determination of the case by the courts, a copy of the decree shall be filed with the state engineer, and thereupon he shall proceed in accordance with such decree.''

Both of the foregoing sections have since been amended, and, as amended, will be found in Laws Utah 1911, pp. 4 and 143. The amendments or changes are, however, not material to this action.

When plaintiff's application and what he proposed to do are read and considered in connection with the foregoing statutory provisions, it seems clear that neither the state engineer nor the district court had power to grant what plaintiff demanded. To our minds it is equally clear that this court is powerless to grant his prayer to which we have hereinbefore referred. While plaintiff's purposes to save water and to apply the same to a beneficial use are to be commended, yet there is no power vested in the state engineer to grant plain-

tiff's application in view that there is no unappropriated water unless and until plaintiff succeeds in preventing the loss by seepage as proposed by him. We cannot find any power in the statute whereby the state engineer may permit the plaintiff to enter upon the company's ditch and to improve the same so as to prevent the alleged waste through seepage. If the company is unnecessarily wasting water to the detriment of the plaintiff, it may well be that he may go into court and commence a proper action, and, if he can, in such action, establish the fact that the company is unnecessarily wasting water to his detriment or damage that the court will require the company to cease its unnecessary wasting of water. It may also be the case—yet we know of no precedent to that effect, and plaintiff has cited none—that in case a water claimant shows that water in substantial quantities is unnecessarily lost or wasted through seepage or otherwise by reason of an imperfect condition of a prior appropriator's ditches, that such loss or waste can be prevented by making the bottoms and sides of such ditches impervious, and that the claimant, at his own cost and expense, and at a proper time, is able and willing to so improve and repair said ditches as to prevent the loss or waste of water, if he be permitted the right to appropriate and use the same, the court, in a proper action, may have the power to make such order as will be necessary to give the claimant the right to enter upon the ditches and to repair and improve them so as to prevent the loss and waste of water, and to give him the right to appropriate such water and to apply it to some beneficial use. But, even though such power be deemed to exist in a court under our statute, respecting which we express no opinion, yet it is very clear that no such power is vested in the state engineer. If, therefore, no such power is vested in that officer by law, neither the district court nor this court can require him to do that which the law does not authorize.

The district court therefore committed no error in sustaining the demurrer.

The judgment is therefore affirmed, with costs to respondent.

McCARTY and CORFMAN, JJ., concur.